J-S11040-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RANADA TAMARA MCCOY-ALMOND, | : | |
| | : | |
| Appellant | : | No. 1435 WDA 2019 |

Appeal from the Judgment of Sentence Entered August 20, 2019
in the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0013249-2018

BEFORE:  NICHOLS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    FILED APRIL 30, 2020

Ranada Tamara McCoy-Almond ("McCoy-Almond") appeals from the judgment of sentence imposed following her convictions of driving under the influence of a controlled substance ("DUI"), careless driving, and speeding.[1] We affirm.

On July 10, 2018, at approximately 10:16 a.m., Pennsylvania State Trooper Nickolas Elliot ("Trooper Elliot") was conducting speed limit enforcement on northbound Route 28 in Allegheny County.  Trooper Elliot's radar clocked a black BMW traveling 81 miles per hour ("mph") in a 55 mph zone.  Trooper Elliot initiated a traffic stop.  Trooper Elliot exited his cruiser, and, as he approached the BMW, observed that the vehicle's windows were covered with a dark sun-screening tint.  Trooper Elliot saw that there were two occupants in the vehicle and asked the driver, later identified as McCoy-

_____

[1] 75 Pa.C.S.A. §§ 3802(d)(1), 3714(a), 3362(a)(2).

Almond, for her license, registration, and proof of insurance. While reviewing the documents, Trooper Elliot observed that McCoy-Almond exhibited visible signs of drug impairment, including dilated pupils and red and bloodshot eyes. Based on his observations, Trooper Elliot asked McCoy-Almond if she had recently smoked marijuana. McCoy-Almond responded that she had smoked marijuana approximately two hours prior. Trooper Elliot then asked McCoy-Almond to exit the BMW and to perform field sobriety tests ("FSTs").

After observing McCoy-Almond perform the FSTs, Trooper Elliot concluded, based upon his prior observations and the FSTs, that McCoy-Almond was impaired. Trooper Elliot then arrested McCoy-Almond and transported her to the Pennsylvania State Police barracks in Kittanning, where Trooper Elliot read her the required DL-26b form, and asked her to submit to chemical testing. McCoy-Almond signed the form, and consented to the chemical testing of her blood. A blood sample, which was collected from McCoy-Almond and sent to the Allegheny County Medical Examiner's Office, tested positive for cannabinoids.

The Commonwealth charged McCoy-Almond with two counts of DUI, and one count each of reckless driving, careless driving, speeding, and windshield obstructions and wipers.[2] McCoy-Almond filed a pre-trial Motion to suppress, seeking to suppress her statement that she had smoked marijuana two hours prior to the traffic stop, as well as all evidence flowing from her statement as

---

[2] 75 Pa.C.S.A. §§ 3802 (d)(1), (d)(2), 3736(a), 3714(a), 3362(a)(2), 4524(b).

fruit of the poisonous tree. Specifically, McCoy-Almond argued that Trooper Elliot extended the traffic stop without proper legal justification, and had failed to advise McCoy-Almond of her Miranda[3] rights prior to asking if she had recently smoked marijuana. Following a suppression hearing, the trial court denied the Motion to suppress.

Following a stipulated non-jury trial, the trial court found McCoy-Almond guilty of one count each of DUI, careless driving, and speeding. McCoy-Almond was found not guilty of the remaining offenses.

On August 20, 2019, the trial court sentenced McCoy-Almond to four days of confinement in the DUI Alternative to Jail Program, and a period of five months' probation, to run concurrently with the four-day confinement for her DUI conviction. The trial court imposed no further penalty on her convictions of careless driving and speeding. McCoy-Almond filed a timely Notice of Appeal and a court-ordered 1925(b) Concise Statement of Errors Complained of on Appeal.

McCoy-Almond now presents the following issue for our review:

> 1. [Whether] the trial court abuse[d] its discretion in denying []McCoy-Almond's motion to suppress evidence of her statements and her blood/toxicology reports?

Brief for Appellant at 5.

McCoy-Almond argues that the trial court erred in denying her Motion to suppress because Trooper Elliot improperly extended the traffic stop beyond

_____

[3] See Miranda v. Arizona, 384 U.S. 436 (1966).

the time needed to address the purpose of the stop. Id. at 12, 14. McCoy-Almond contends that Trooper Elliot pulled her over and was provided with valid insurance, registration, and driver's license. Id. at 14. Trooper Elliot did not immediately issue the traffic citation and "instead he began questioning her about when she smoked marijuana." Id. McCoy-Almond asserts that Trooper Elliot's testimony, i.e., that McCoy-Almond was "not free to leave" meant that she was subject to a custodial interrogation and not an investigative detention. Id. at 14, 17

We adhere to the following standard of review:

> We may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. An appellate court, of course, is not bound by the suppression court's conclusions of law.

Commonwealth v. Hampton, 204 A.3d 452, 456 (Pa. Super. 2019).

"The Fourth Amendment of the Federal Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures." Commonwealth v. Walls, 53 A.3d 889, 892 (Pa. Super. 2012). There are three categories of interactions between police and a citizen:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention[,]" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to

- 4 -

constitute the functional equivalent of an arrest. Finally, an arrest or "custodial [interrogation]" must be supported by probable cause.

Commonwealth v. Downey, 39 A.3d 401, 405 (Pa. Super. 2012) (citation omitted).

Miranda warnings must be provided to a defendant only if she is subjected to a custodial interrogation. Commonwealth v. Garvin, 50 A3d 694, 698 (Pa. Super. 2012).

> The standard for determining whether an encounter with the police is deemed "custodial" or police have initiated a custodial interrogation is an objective one based on a totality of the circumstances, with due consideration given to the reasonable impression conveyed to the person interrogated. Custodial interrogation has been defined as questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his or her freedom of action in any significant way. "Interrogation" is police conduct calculated to, expected to, or likely to evoke admission. When a person's inculpatory statement is not made in response to custodial interrogation, the statement is classified as gratuitous, and is not subject to suppression for lack of warnings.
>
> The appropriate test for determining whether a situation involves custodial interrogation is as follows:
>
> > ... whether he is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation.
>
> Said another way, police detentions become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of arrest.
>
> The factors a court utilizes to determine, under the totality of the circumstances, whether a detention has become so coercive as to constitute the functional equivalent of arrest include: the

- 5 -

> basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions. The fact that a police investigation has focused on a particular individual does not automatically trigger "custody[.]"

Commonwealth v. Baker, 24 A.3d 1006, 1019-20 (Pa. Super. 2011) (internal citations, brackets and quotations omitted); see also Commonwealth v. Gonzalez, 979 A.2d 879, 888 (Pa. Super. 2009) (stating that the test for custodial interrogation does not depend upon the subjective intent of the law enforcement officer).

Instantly, the trial court, in its Opinion, found that McCoy-Almond was subjected to an investigative detention, not a custodial interrogation. Trial Court Opinion, 11/12/19, at 4-5. Further, the trial court reasoned that because Miranda warnings are only given during custodial interrogation, Trooper Elliot was not required to read McCoy-Almond her Miranda warnings before asking if she had smoked marijuana that day. Id.

The record discloses that Trooper Elliot, the sole witness at the suppression hearing, testified that his radar detected a black BMW traveling 81 mph in a 55 mph zone. N.T., 7/9/19, at 5-6. Trooper Elliot initiated a traffic stop and identified McCoy-Almond as the driver of the black BMW. Id. Upon request, McCoy-Almond provided her driver's license, registration, and proof of insurance. Id. at 6, 12. Trooper Elliot, before returning to his vehicle to check the documents, stayed at the black BMW and talked to McCoy-

Almond. Id. at 12. Further, Trooper Elliot testified that "[he] was just asking [McCoy-Almond] some questions" and that he "would have placed [McCoy-Almond] under arrest" if she had driven away. Id. at 14-15. Trooper Elliot eventually returned to his vehicle and determined the documents were valid. Id. at 13. At some point prior to issuing the citation and returning McCoy-Almond's documents, Trooper Elliot asked McCoy-Almond if she had smoked marijuana. Id. at 12-15. McCoy-Almond responded that she had smoked marijuana approximately two hours prior to the traffic stop. Id. at 7. Trooper Elliot subsequently conducted FSTs, determined that McCoy-Almond was impaired and could not safely operate the vehicle, and transported McCoy-Almond to the Pennsylvania State Trooper barracks in Kittanning. Id. at 7-10.

Our review indicates that McCoy-Almond was properly pulled over for speeding and that during the course of the stop, Trooper Elliot suspected that she was driving impaired. Initially, Trooper Elliot asked McCoy-Almond for her driver's license, registration, and proof of insurance. Id. at 5-6; see 75 Pa.C.S.A. § 6308(b) (stating that a police officer may check "vehicle registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or secure such other information as the officer may reasonably believe necessary to enforce the provisions of [the Vehicle Code]"). Moreover, there is nothing in the record to suggest that Trooper Elliot used, threatened, or showed force. See Commonwealth v.

Toanone, 553 A.2d 998, 1003 (Pa. Super. 1989) (stating that the defendant was not subject to a custodial interrogation, and Miranda warnings were not needed, where the police officer did not use, show, or threaten force, and the defendant was not ordered into a police car). McCoy-Almond was not transported anywhere, for any duration, until after Trooper Elliot had probable cause to believe McCoy-Almond was driving impaired. N.T., 7/9/19, at 11; see also Toanone, supra. Based on his observations, Trooper Elliot asked a single question, whether McCoy-Almond had smoked marijuana earlier that day, to confirm or dispel his suspicions that she was impaired. N.T., 7/9/19, at 12-15; see also Commonwealth v. Haupt, 567 A.2d 1074, 1080 (Pa. Super. 1989) (stating that, during the course of a typical traffic stop, a police officer may ask a moderate number of questions in order to "obtain information confirming or dispelling the officer's suspicions.").

Given the totality of the circumstances, we conclude that the trial court correctly determined that Trooper Elliot's interaction with McCoy-Almond was an investigative detention, and not a custodial interrogation requiring Miranda warnings. See Commonwealth v. Turner, 772 A.2d 970, 977 (Pa. Super. 2001) (en banc) (stating that while traffic stops "curtail significantly" an individual's freedom, the detention is typically temporary and brief and does not generally rise to the level of custodial interrogation).

To the extent that McCoy-Almond asserts that the traffic stop was impermissibly extended, relying on Rodriguez v. United States, 575 U.S.

348 (2015), the instant case is distinguishable. In Rodriguez, the defendant was stopped for a minor traffic violation. Id. at 351. The police officer then completed document and record checks before issuing a written warning. Id. at 351-52. The police officer returned the documents and issued the citations, but prevented the defendant from leaving until a drug-sniffing dog could arrive on scene, more than 30 minutes later. Id. at 352. The United States Supreme Court held that the police officer needed reasonable suspicion of some criminal activity in order to prolong the traffic stop after the primary purpose was completed. Id. Further, a traffic stop may "last no longer than is necessary to effectuate" the purpose of the traffic stop. Id. at 356-57.

Instantly, after McCoy-Almond had supplied her driver's license, insurance, and registration, Trooper Elliot "stayed up at the car to talk to [McCoy-Almond]" before returning to his vehicle to check the validity of the documents. Id. at 12-13. Trooper Elliot did not radio for assistance or otherwise significantly delay the encounter. Trooper Elliot merely asked McCoy-Almond if she had smoked marijuana before issuing the citation. Id. at 12-15. Under these circumstances, the record supports the trial court's determination that the traffic stop was not impermissibly extended.

Based upon the foregoing, the record supports the trial court's determinations that McCoy-Almond was subjected to an investigative detention; Trooper Elliot was not required to provide Miranda warnings before asking whether or not McCoy-Almond had smoked marijuana; and Trooper

Elliot did not impermissibly extend the stop. Accordingly, we affirm McCoy-Almond's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/30/2020